Angel Carrazco, Jr.        (SBN 230845)
Kent M. Henderson      (SBN 139530)
Christopher L. Holm      (SBN 308446)
**CARRAZCO LAW, A.P.C.**
18301 Irvine Boulevard
Tustin, CA 92780
Telephone: 714-541-8600
Facsimile: 714-541-8601
Email: angel@carrazcolawapc.com
        hendolaw@gmail.com
        chris@carrazcolawapc.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| D.S., a minor by and through his guardian *ad litem* Elsa Acosta, individually and as successor-in-interest to William Salgado, et.al.<br><br>                    Plaintiffs,<br><br>              v.<br><br>CITY OF HUNTINGTON PARK; et.al.<br><br>                    Defendants<br><br>AND CONSOLIDATED ACTION | Case No. 2:23-cv-09412 CBM (AGR) *[lead case]*<br>*(Consolidated with* 2:24-cv-04898 CBM *(AGR))*<br> *Assigned to*: District Judge: Consuelo B. Marshall; Magistrate Judge: Alicia G. Rosenberg<br>**PLAINTIFFS' NOTICE OF OPPOSITION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>[Plaintiffs' Response to Separate Statement, Declarations, and Evidence filed concurrently herewith]<br><br>Date:        April 1, 2025<br>Time:        10:00 a.m.<br>Courtroom:  8D |

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1

2

**TO THE HONORABLE COURT, DEFENDANTS, AND THEIR
ATTORNEYS OF RECORD: PLEASE TAKE NOTICE** that, on April 1, 2025,
at 10:00 a.m. in Courtroom 8D, Plaintiffs WILLIAM OMAR CASTILLO
MIRANDA; JUANA MARIA MIRANDA; O.C.E. a minor by and through their
Guardian ad Litem, EUGENIA GUADELUPE ESPINOZA SALMERON;
EUGENIA GUADELUPE ESPINOZA SALMERON; OSMAR ANTONIO
CASTILLO BLANDON; and KARLA VANESSA BLANDON; will and hereby
do oppose Defendants' Motion for Summary Judgment. This Opposition is based
on the Memorandum of Points and Authorities, Plaintiffs' Response to Defendants'
Undisputed Material Facts and Plaintiffs' Undisputed Material Facts, the papers
and pleadings on file in this case, and such other authority as the Court may decide.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I.    **INTRODUCTION**............................................................1

  A. **Motions for Summary Judgment Challenging Standing Require the Judge to Only Decide Issues of Fact Necessary to Make the Standing Determination**........................................................3

  B. **Defendants Have Failed to Demonstrate the Absence of Any Triable Issue of Fact.** .........................................................4

  C. **Plaintiffs' State Law Claims Are Sufficiently Pled Under the Government Claim and Operative Complaint.** ..........................7

  D. **Plaintiffs' First Amended Complaint Conforms to Federal Pleading Requirements**.........................................................8

II.   **THE STATE CLAIMS**..................................................14

  A. **The First Amended Complaint Sufficiently Pleads the Claims in this Case.** ...............................................................15

  B. **The Decedent's Father Has Standing to Assert State Law Claims**...17

  C. **The Decedent's Brother, Osmar Antonio Castillo Blandon, Has Standing to Assert State Law Claims**..................................17

  D. **The Decedent's Youngest Brother, O.C.E., and Step-Mom Have Standing to Assert State Law Claims**..................................17

  E. **Plaintiffs Concede that Juana Miranda and Karla Blandon Were Not Present at the Scene and Therefore Likely Cannot Assert Negligent Infliction of Emotional Distress Claim.** ................................19

III.  **FOURTEENTH AMENDMENT CLAIMS**.............................19

  A. **The Decedent's Father Has Standing to Assert Fourteenth Amendment Claims.** ..................................................20

  B. **The Decedent's Informal Adoptive Mother Has Standing to Assert Fourteenth Amendment Claims.** ......................................23

  C. **Plaintiffs Concede that the Siblings of the Decedent May Not Have Standing to Assert Fourteenth Amendment Claims.** ...................24

IV.  **CONCLUSION**.........................................................25

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Crayton v. Concord EFS, Inc. (In re ATM Fee Antitrust Litig.)*
  (9th Cir. 2012) 686 F.3d 741, 747, 748.................................................3, 4, 5

*Warth v. Seldin*
  (1975) 422 U.S. 490, 498-99..................................................................3

*Del. Valley v. Johnson & Johnson*
  (9th Cir. 2008) 523 F.3d 1116, 1119.......................................................3, 4

*Haase v. Sessions*
  (D.C. Cir. 1987) 835 F.2d 902, 904, 266 U.S. App. D.C. 325 ..................3, 4

*Duke Power Co. v. Carolina Envtl. Study Group, Inc.*
  (1978) 438 U.S. 59, 72, 98 S. Ct. 2620, 57 L. Ed. 2d 595 ............................3

*Lujan v. Defenders of Wildlife*
  (1992) 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351......................3

*Bischoff v. Osceola Cnty., Fla.*
  (11th Cir. 2000)222 F.3d 874, 878-80......................................................4

*Kling v. Hallmark Cards Inc.*
  (9th Cir. 2000) 225 F.3d 1030, 1039 ......................................................4

*Celotex Corp. v. Catrett*
  (1986) 477 U.S. 317, 323-24..............................................................4, 5

*T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*
  (9th Cir. 1987) 809 F. 2d 626, 630 .........................................................5

*First Nat'l Bank v. Cities Serv. Co.*
  (1968) 391 U.S. 253, 288-89.................................................................5

*Corales v. Bennett*
  (9th Cir. 2009) 567 F.3d 554, 562...........................................................5

*Green v. City and County of San Francisco*
  751 F.3d 1039 (9th Cir. 2014) ...............................................................5

*Anderson v. Liberty Lobby, Inc.*
  (1986) 477 U.S. 242, 248.....................................................................5

*S.E.C. v. M & A W., Inc.*
  (9th Cir. 2008) 538 F.3d 1043, 1054-55 ...................................................5

*SEC v. Koracorp Indus., Inc.*
  (9th Cir. 1978) 575 F.2d 692, 699...........................................................5

*Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.*
  (2nd Cir. 1999) 182 F.3d 157.................................................................6

*Nevada v. Watkins,*
  (9TH Cir. 1990) 914 F.2d 1545, 1560..................................................6, 15

*United States v. Birtle*
  (9th Cir. 1986) 792 F.2d 846, 848......................................................6, 15

*Thompson v. Commissioner*

(9th Cir. 1980) 631 F.2d 642, 649...................................................6, 15
Conley v. Gibson
(1957) 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80................................9, 10
Swierkiewicz v. Sorema N. A.
(2002) 534 U.S. 506, 508..............................................................9
Jenkins v. McKeithen
(1969) 395 US 411, 421, 89 S.Ct. 1843, 1849.......................................9
Gilligan v. Jamco Develop. Corp.
(9th Cir. 1997) 108 F3d 246, 249....................................................9
McCalden v. California Library Ass'n
(9th Cir. 1990) 955 F2d 1214, 1219.................................................10
Ayers v. United States
(6th Cir. 2002) 277 F3d 821, 829....................................................10
Holman v Indiana
(7th Cir. 2000) 211 F3d 399, 407....................................................10
Coleman v. Standard Life Ins. Co.
(ED CA 2003) 288 F.Supp.2d 1116, 1120...........................................10
Independent Enterprises Inc. v. Pittsburgh Water & Sewer Authority
(3rd Cir. 1997) 103 F3d 1165, 1175.............................................10, 11
Brookhaven Landscape & Grading Co., Inc. v. J.F.Barton Contracting Co.
(11th Cir. 1982) 676 F2d 516, 523..................................................11
Henry v. Daytop Village, Inc.
(2d Cir. 1994) 42 F3d 89, 95.......................................................11
PAE Government Services, Inc. v. MPRI, Inc.
(9th Cir. 2007) 514 F.3d 856........................................................11
American Int'l Adjustment Co. v. Galvin
(7th Cir. 1996) 86 F3d 1455, 1460..................................................11
Sistrunk v. City of Stringsville
(6th Cir.1996) 99 F.3rd 194, 197....................................................13
Kline v. Rogers
(6th Cir.1996) 87 F.3rd 176, 179 ...................................................13
Wright v. MetroHealth Med. Ctr.
(6th Cir.1995) 58 F.3rd 1130, 1138 .............................................13, 14
Columbia Natural Res., Inc. v. Tatum
(6th Cir.1995) 58 F.3rd 1101, 1109.................................................13
In re DeLorean Motor Co.
(6th Cir.1993) 991 F.2d 1236, 1240.................................................13
Mayer v. Mylod
(6th Cir.1993) 988 F.2d 635, 638...................................................13
Johnson v. Bay Area Rapid Transit Dist.
(9th Cir. 2013) 724 F.3d 1159, 1169............................................19, 20

*Smith v. City of Fontana*
(9th Cir. 1987) 818 F.2d 1411, 1418....................................................................19
*Hodgers-Durgin v. de la Vina*
(9th Cir. 1999) 199 F.3d 1037.........................................................................19
*Kelson v. City of Springfield*
(9th Cir. 1985) 767 F.2d 651, 654...................................................................19
*Daniels v. Williams*
(1986) 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662......................................19
*Smith v. City of Fontana*
(9th Cir. 1987) 818 F.2d 1411, 1418..................................................................20
*Strandberg v. City of Helena*
(9th Cir. 1986) 791 F.2d 744, 748...................................................................20
*Khachatryan v. Blinken*
(9th Cir. 2021) 4 F.4th 841, 863......................................................................20
*Lee v. City of Los Angeles*
(9th Cir. 2001) 250 F.3d 668, 685...................................................................20
*Ward v. City of San Jose*
(9th Cir. 1991) 967 F.2d 280, 283...................................................................20
*Wheeler v. City of Santa Clara*
(9th Cir. 2018) 894 F.3d 1046, 1058................................................................20
*Kirkpatrick v. County of Washoe*
(9th Cir. 2016) *(en banc)* 843 F.3d 784, 789.................................................21
*Fosbinder v. Cty. Of San Diego*
2024 U.S. Dist. LEXIS 197571.......................................................................22
*Tylena M. v. Heartshare Children's Servs.*
(S.D.N.Y. 2005) 390 F. Supp. 2d 296, 319.....................................................23
**STATE CASES**
*Hernandez v. City of Stockton*
 (2023) 90 Cal. App. 5th 1222, 1231.............................................................7, 8
*Stockett v. Association of Cal. Water Agencies Joint Power Ins. Authority*
(2004) 34 Cal.4th 441, 446.................................................................................7
*DiCampli-Mintz v. County of Santa Clara*
(2012) 55 Cal.4th 983, 991...............................................................................7
*Thing v. La Chusa*
(1989) 48 Cal. 3d 644, 668.........................................................................15, 17
*Wilks v. Hom*
(1992) 2 Cal.App.4th 1267, 1271....................................................................18
**STATUTES**
U.S. Const. amend. XIV, § 1...........................................................................19
42 U.S.C. § 1983.............................................................................................19
Fed. R. Civ. P. 56(a) .........................................................................................3

Fed. R. Civ. P. 56(c) ………………………………………………………
Fed. R. Civ. P. 8(a)(2) …………………………………………………8
Fed. R. Civ. P. 8(d)(1) ……………………………...………………9, 10
Fed. R. Civ. P. 8(d)(2) ……………………………...…………………11
Fed. R. Civ. P. 12(b)(6) ………………………………………………..13
Government Claims Act, § 910…………………………………………8
California <u>Government Code</u> §§ 815.2, 820, 825……………………...………11, 12
Uniform Parentage Act § 7601……………………………………...………24
Uniform Parentage Act § 7610…………………………………….………22, 23

**OTHER AUTHORITIES**

5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004) …………………………………………….……………………9
*FRCP Appendix of Forms, Official Form 11* ("Complaint for Negligence")….....10

1

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

2

### I.    INTRODUCTION

3

As a threshold matter, Defendants failed to file their Motion for Summary

4

Judgment in the correct case, and on that basis alone, it should be denied. In fact,

5

the death certificate Defendants request Judicial Notice of actually defeats their

6

MSJ as it lists the "informant's name," as "WILLIAM CASTILLO, **FATHER**."

7

(**Emphasis Added**).

8

Plaintiffs filed the operative First Amended Complaint on July 29, 2024.

9

DOC # 12. The Court then consolidated the cases on September 3, 2024 and

10

ordered that "**All filings will now be filed in the lead case** CV 23-9412-

11

CBM(AGRx). DOC #38 (**emphasis added**). Defendants then filed their Answer to

12

the First Amended Complaint on September 17, 2024 in the lead case, as ordered

13

by the Court, which implies the Defendants were aware of the consolidation and

14

that all documents should be filed in the lead case. DOC #39.

15

Nonetheless, **Defendants violated the Court's order** and filed the Motion

16

for Summary Judgment in Case No. 2:24-cv-04898 CBM (AGR). DOC #26. On

17

this basis alone, Plaintiffs have not been called to the correct court and the Motion

18

for Summary Judgment should be denied. Regardless, Defendants' Motion for

19

Summary Judgment fails on the merits to shift the burden from the Defendants to

20

the Plaintiffs and fails to show that there is no genuine issue of material fact.

21

In fact, Defendants' Motion for Summary Judgment attacks only standing,

22

the government claim, and the existence of Negligent Infliction of Emotional

23

Distress as a separate tort. It does not attack the merit of Plaintiffs' claims and asks

24

1   the judge to make a decision of law based only on the Defendants' facts as they

2   assert them. In fact, Defendants have stipulated to not file a motion for summary

3   judgment in the lead case of the surviving children plaintiffs, whose First Amended

4   Complaint contains a negligence claim for relief. [DOC #25, Claim #5 for

5   Negligence, and DOC #48, Stipulation, Page 4, Lines 1-8] The reality is the

6   opposite, that the facts should be viewed in the light most favorable to the

7   nonmoving party, and the only facts that should be examined by the Court are ones

8   that bear on the issue of standing.

9        Defendants' Motion for Summary Judgment ("MSJ") relies on their own

10  version of the facts, which Plaintiffs vehemently dispute. They assert that Decedent

11  William Salgado's biological father William Castillo lacks a father's rights for loss

12  of familial relations under the 14th amendment because he was adopted by his

13  grandmother (there was no formal adoption). At the same time, they assert that the

14  grandmother who allegedly adopted him lacks the same rights under the 14th

15  amendment (even though she helped raise him). They claim the brothers forfeited

16  their rights by failing to file a government claim for their claims, although they did,

17  and that the Plaintiffs failed to sufficiently plead negligence, which is not true

18  under federal pleading requirements. In short, the Defendants plead their own

19  version of the truth, which conveniently leaves none of the family members with

20  rights under the law. [1]

21

22  [1] In reality, even taking the facts as the Defendants assert them, William Castillo still has rights
23  to the state claims even after the alleged adoption because Decedent's adoptive mother being the
    grandmother of the Decedent would make William Castillo the brother of William Salgado, and
    therefore he would still have standing to assert the negligent infliction of emotional distress
24  claims. Regardless, they are close relatives who have suffered a severe loss, and Defendants are
    attempting to dispose of this case on technical legal issues despite being technically wrong.

### A. Motions for Summary Judgment Challenging Standing Require the Judge to Only Decide Issues of Fact Necessary to Make the Standing Determination.

Standing is a question of law for the Court to decide. *Crayton v. Concord EFS, Inc. (In re ATM Fee Antitrust Litig.)* (9th Cir. 2012) 686 F.3d 741, 747, 748; citing *Warth v. Seldin* (1975) 422 U.S. 490, 498-99; *Del. Valley v. Johnson & Johnson*, 523 F.3d 1116, 1119; *see also Haase v. Sessions*, 835 F.2d 902, 904, 266 U.S. App. D.C. 325 (D.C. Cir. 1987) ("[T]he ultimate responsibility to ensure subject matter jurisdiction always lies with the court, not the parties.").

In the 9th Circuit Court of Appeals opinion *Crayton v. Concord EFS, Inc.,* the Court continued: "Because the court (and not a jury) decides standing, the district court must decide issues of fact necessary to make the standing determination. *See Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 72, 98 S. Ct. 2620, 57 L. Ed. 2d 595 (1978)

However, when standing is challenged on summary judgment, **"[t]he court shall [not] grant summary judgment** if the movant shows that there is [a] genuine dispute as to **any material fact** . . . ." *Brennan v. Concord EFS, Inc.,* (9th Cir. 2012) 686 F.3d 741 **(emphasis added)**.Fed. R. Civ. P. 56(a); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) ("[E]ach element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.")." *Crayton v. Concord EFS, Inc. (In re ATM Fee Antitrust Litig.)* (9th Cir. 2012) 686 F.3d 741, 748.

1    Therefore, summary judgment is inappropriate without the district court

2    resolving the factual dispute any time there is a genuine issue of material

3    fact. *Crayton v. Concord EFS, Inc. (In re ATM Fee Antitrust Litig.)* (9th Cir. 2012)

4    686 F.3d 741, 747; citing *Bischoff v. Osceola Cnty., Fla.*, 222 F.3d 874, 878-80

5    (11th Cir. 2000); *see also Haase*, 835 F.2d at 907, 910.

6    Here, there is a genuine dispute as to the material fact of whether William

7    Omar Castillo Miranda ("William Castillo") and Juana Maria Mendoza ("Juana

8    Mendoza") have claims for loss of familial relations. As will be shown in this

9    Opposition, both have a sufficient basis for their 14th Amendment claims, William

10   Castillo has a claim for NIED, and the other Plaintiffs, with the exception of Karla

11   Vanessa Blandon, have sufficient bases for their state law claims.

12   **B. Defendants Have Failed to Demonstrate the Absence of Any Triable Issue of Fact.**

13   When a district court determines standing on summary judgment (as is the

14   case here), "[w]e must determine [de novo], viewing the evidence in the light most

15   favorable to the nonmoving party, whether there are any genuine issues of material

16   fact and whether the district court correctly applied the relevant substantive

17   law." *Del. Valley v. Johnson & Johnson*, 523 F.3d 1116, 1119. In the absence of

18   genuine issues of material fact, we may affirm the district court's summary

19   judgment "on any ground supported by the record, regardless of whether the

20   district court relied upon, rejected, or even considered that ground," *Kling v.*

21   *Hallmark Cards Inc.*, 225 F.3d 1030, 1039 (9th Cir. 2000), if "the movant is

22   entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

23

24

1    Under F.R.C.P. Rule 56, Summary Judgment exists to isolate and dispose of

2  factually unsupported claims. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24

3  (1986). Summary judgment is appropriate when there are no genuine issues of

4  material fact, and the moving party is entitled to judgment as a matter of law.

5  F.R.C.P. Rule 56(a). A 'material" fact is one relevant to an element of a claim or

6  defense and whose existence might affect the outcome of the suit. *T.W. Elec. Serv.*

7  *v. Pacific Elec. Contractors Ass'n,* 809 F. 2d 626, 630 (9th Cir. 1987). The party

8  asserting the existence of a material fact must show "sufficient evidence supporting

9  the claimed factual dispute . . . to require a jury or judge to resolve the parties'

10  differing versions of the truth at trial." *Id.* (quoting *First Nat'l Bank v. Cities Serv.*

11  *Co.,* 391 U.S. 253, 288-89 (1968)). Motions for Summary Judgment are

12  appropriate only if, taking the evidence and all reasonable inferences drawn

13  therefrom in the light most favorable to the nonmoving party, there are no genuine

14  issues of material fact and the moving party is entitled to judgment as a matter of

15  law. *Corales v. Bennett,* 567 F.3d 554, 562 (9th Cir. 2009); *Green v. City and*

16  *County of San Francisco*, 751 F.3d 1039 (9th Cir. 2014). A fact is material when it

17  affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242,

18  248, (1986). A factual dispute is "genuine" if the evidence is such a reasonable jury

19  could return a verdict for the nonmoving party. *Celotex Corp. v. Catrett,* 477 U.S.

20  317 (1986). The 9th Circuit recognizes "that summary judgment is singularly

21  inappropriate where credibility is at issue." *S.E.C. v. M & A W., Inc.,* 538 F.3d

22  1043, 1054-55 (9th Cir. 2008) (quoting *SEC v. Koracorp Indus., Inc.,* 575 F.2d

23  692, 699 (9th Cir. 1978)). The opposition evidence may consist of declarations,

24  admissions, evidence obtained through discovery and matters judicially noticed.

1  FRCP 56(c);  *Celotex Corp. v. Catrett*, 477 US 317 (1986).  The non-movant must

2  designate specific facts showing a genuine issue for trial.  FRCP 56(c).

3      Because summary judgment is a "drastic device," cutting off a party's right

4  to present its case to a trier of fact, the moving party bears the "heavy burden" of

5  demonstrating the absence of any triable issue of material fact. *Nationwide Life*

6  *Ins. Co. v. Bankers Leasing Ass'n, Inc.* (2nd Cir. 1999) 182 F.3d 157.

7      Defendants have apparently not disputed negligence in their Motion for

8  Summary Judgment, instead focusing on what they claim is a failure to file a

9  government claim (although the Plaintiffs did), and a lack of standing for the

10  Plaintiffs on their Fourteenth Amendment and Negligent Infliction of Emotional

11  Distress Claims. However, there are clear issues of material fact, including the

12  relationship between William Castillo and his son William Salgado, and regarding

13  the relationships of the parties.

14      In fact, Defendants Motion for Summary Judgment has very little about the

15  actual events giving rise to this case. The Defendants implicitly admit that there are

16  issues of material fact regarding whether the shooting was negligent by not

17  attacking the first prong of a negligent infliction of emotional distress claim. They

18  claim that Plaintiffs instead did not claim negligence in their government claim

19  (they did, as outlined below), to try and dispose of Plaintiffs' claims without

20  discussing their merit.

21      The 9th Circuit follows the rule that new issues cannot be raised for the first

22  time in reply briefs because it would be unfair to the opposers who have no

23  advantage of briefing the issue. *Nevada v. Watkins,* 914 F.2d 1545, 1560; citing

24  *United States v. Birtle* (9th Cir. 1986) 792 F.2d 846, 848 (quoting *Thompson v.*

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

1    *Commissioner* (9th Cir. 1980) 631 F.2d 642, 649, *cert. denied* 452 U.S. 961, 101 S.

2    Ct. 3110, 69 L. Ed. 2d 972 (1981)). Therefore, Defendants cannot raise substantive

3    issues related to the shooting in their reply, as they have not raised that issue in the

4    moving papers.

5    **C. Plaintiffs' State Law Claims Are Sufficiently Pled Under the Government Claim and Operative Complaint.**

6    On the first page of Plaintiffs' Government Claim, underlined in the first

7    paragraph, Plaintiffs assert general negligence against the Defendants. **Exhibit No.**

8    **1,** *Page 1,* ¶ 1. As stated in Plaintiffs' Government Claim, the Plaintiffs include

9    William Omar Castillo Miranda, Omar Antonio Castillo Blandon, O.C.E., and

10   Juana Maria Miranda. *Id.* In the Government claim, the Plaintiffs are asserting

11   claims for damages including pain and suffering. **Exhibit No. 1,** *Government*

12   *Claim, Page 2, Heading 4.,* ¶ *2.* The Plaintiffs also asserted in the Government

13   Claim that they witnessed the events and shooting unfold. *Id.* The Plaintiffs also

14   asserted in their government claim that they were making State and Federal claims

15   for general damages, including for pain and suffering. **Exhibit No. 1,** *Government*

16   *Claim, Page 2, Heading 4.,* ¶ *3, 2.* As to their general damages, the Plaintiffs

17   claimed their own "past and future physical, mental, and emotional pain and

18   suffering in an amount in excess of the jurisdictional minimum." **Exhibit No. 1,**

19   *Government Claim, Pages 3-4, Heading 7,* ¶ *3, 2.*

20   Under State Theories of Liability, the Plaintiffs in their Government Claim

21   submitted to the Defendants, list negligence. **Exhibit No. 1,** *Government Claim,*

22   *Page 3, "State Theories of Liability", Heading C.* Significantly, the Government

23   claim quotes numerous provisions of the California Government Code, including

24

1 Gov. Code Sections 815.2, 820 which is for the negligence of a public employee in

2 the course and scope of employment. **Exhibit No. 1,** *Page 1, supra.*

3       The purpose of a Government Claim under the Government Claims Act is

4 "to provide the public entity sufficient information to enable it to adequately

5 investigate the claims and to settle them, if appropriate, without the expense of

6 litigation." *Hernandez v. City of Stockton* (2023) 90 Cal. App. 5th 1222, 1231;

7 citing *Stockett v. Association of Cal. Water Agencies Joint Power Ins. Authority*

8 (2004) 34 Cal.4th 441, 446; see *DiCampli-Mintz v. County of Santa Clara* (2012)

9 55 Cal.4th 983, 991. It is not subject to the same requirements as pleadings in court

10 such as the Federal Rules of Civil Procedure, but instead must follow the

11 mandatory requirements of the Government Claims Act.

12       Under the Government Claims Act, the Government Claim must include the

13 date, place, and other circumstances of the occurrence or transaction which gave

14 rise to the claim asserted, a general description of the injury, damage or loss

15 incurred so far as it may be known at the time of presentation of the claim, and the

16 name or names of the public employee or employees causing the injury, damage,

17 or loss, if known. *Hernandez v. City of Stockton* (2023) 90 Cal. App. 5th 1222,

18 1231; *Government Claims Act, Section 910.*

19       Here, the Government Claim included the date, October 30, 2022, the exact

20 address, and the fact that it was police officer employed by Huntington Park Police

21 Department, a part of City of Huntington Park, who shot and killed Decedent

22 William Rene Salgado Miranda. It also claimed that the claimants witnessed the

23 events, were surviving family members of the Decedent, and were asserting claims

24 for loss of comfort and society.

1    The Government Claim asserted the exact claims for negligence, along with

2    all of the supporting evidence required to assert negligent infliction of emotional

3    distress, that Defendants' call for in their MSJ. Therefore, Defendants' MSJ as to

4    the state claims should be denied, as Plaintiffs' Government Claim provided

5    Defendants sufficient information to investigate the claim.

6    **D. Plaintiffs' First Amended Complaint Conforms to Federal Pleading
     Requirements.**

7    Federal Rule of Civil Procedure 8(a)(2) requires only " a short and plain

8    statement of the claim showing that the pleader is entitled to relief," in order to

9    "give the defendant fair notice of what the ... claim is and the grounds upon which

10   it rests," *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

11   Rule 8(a)(2) also only requires "a demand for the relief sought, which may include

12   relief in the alternative or different types of relief." Factual allegations must only

13   be enough to raise a right to relief above the speculative level, see 5 C. Wright &

14   A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004)

15   (hereinafter Wright & Miller) (" [T]he pleading must contain something more ...

16   than ... a statement of facts that merely creates a suspicion [of] a legally cognizable

17   right of action"), on the assumption that all the allegations in the complaint are true

18   (even if doubtful in fact), see, e.g., *Swierkiewicz v. Sorema N. A.* (2002)534 U.S.

19   506, 508.

20   Pleadings are construed liberally in favor of the pleader, and in challenging

21   the sufficiency of a complaint, all of its material allegations are taken as true.

22   *Jenkins v. McKeithen* (1969) 395 US 411, 421, 89 S.Ct. 1843, 1849; *Gilligan v.*

23

24

1 | *Jamco Develop. Corp.* (9th Cir. 1997) 108 F3d 246, 249 – Rule 8 contains "a

2 | powerful presumption against rejecting pleadings for failure to state a claim".

3 |     The following standards apply generally to pleadings in federal court:

4 |     1) "each allegation must be simple, concise, and direct.  No technical form is

5 | required." FRCP 8(d)(1); 2) Unlike practice in many states, the Federal Rules do

6 | not draw distinctions between pleading facts, ultimate facts, or conclusions of law.

7 | Subject to a few exceptions (none of which apply here), conclusory allegations are

8 | perfectly proper in federal actions.  For example, the complaint may allege that

9 | defendant "negligently drove a motor vehicle against plaintiff" resulting in a

10 | specific injury. See *FRCP Appendix of Forms, Official Form 11* ("Complaint for

11 | Negligence").

12 |     Throughout Defendant's MSJ, Defendants attack Plaintiffs' First Amended

13 | Complaint for not stating a plausible cause of action.  In fact, Plaintiffs have given

14 | much more factual detail than required by the Federal Rules.  Plaintiffs have

15 | alleged specific duties owed, specific acts or omissions, specific theories of breach

16 | of duty and specific damages caused by the breach of duty, and specific facts in

17 | support of these allegations.

18 |     Moreover, a complaint may contain two or more statements of a claim for

19 | relief "alternatively or hypothetically, either in a single count…or in separate

20 | ones." [FRCP 8(d)(2); *McCalden v. California Library Ass'n* (9th Cir. 1990) 955

21 | F2d 1214, 1219; *Ayers v. United States* (6th Cir. 2002) 277 F3d 821, 829 –

22 | "alternative pleadings are not disfavored:] Rule 8(a) does not require plaintiff

23 | explicitly to designate alternative claims "as long as it can be reasonably inferred

24 | that this is what (he or she) was doing." *Holman v Indiana* (7th Cir. 2000) 211 F3d

399, 407; *Coleman v. Standard Life Ins. Co.* (ED CA 2003) 288 F.Supp.2d 1116, 1120 (parentheses added). Even if the complaint sets forth a legal theory that cannot support recovery, it is sufficient if the facts alleged support any valid claim; ie., "unless is appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." See *Conley v.. Gibson* (1957) 355 US 41, 45-46.

A party may set forth an many separate claims "as it has, regardless of consistency," provided that all such claims are made in compliance with Rule 11. [FRCP 8(d)(3) (emphasis added); *Independent Enterprises Inc. v. Pittsburgh Water & Sewer Authority* (3rd Cir. 1997) 103 F3d 1165, 1175; *Brookhaven Landscape & Grading Co., Inc. v. J.F.Barton Contracting Co.* (11th Cir. 1982) 676 F2d 516, 523. Plaintiffs may plead two or more inconsistent statements of a claim, even within the same count. *Henry v. Daytop Village, Inc.* (2d Cir. 1994) 42 F3d 89, 95. Neither claim may be construed as an admission to bar alternative or inconsistent claims. *PAE Government Services, Inc. v. MPRI, Inc.* (9th Cir. 2007) 514 F.3d 856 ( "inconsistent allegations are simply not a basis for striking the pleading"). A party asserting several theories of recovery cased on the same set of circumstances may set forth each theory in one count or separate counts. FRCP 8(d)(2); *American Int'l Adjustment Co. v. Galvin* (7th Cir. 1996) 86 F3d 1455, 1460 – Rule 8(d)(2) "abolished the doctrine of election of remedies in federal court".

As alleged by Plaintiffs in the First Amended Complaint ('FAC"), the Defendants "breached its duty of due care" and the Defendants were "negligent and careless in the use of their firearms" with William Salgado shot and killed as a result. DOC #12, ¶¶ 27-33, 57-62. Plaintiffs' FAC pleads all of the following: 1.

1   That in addition to federal law, the FAC is brought "for violations of state law";

2   (DOC #12 ¶2, p.3, line 15) 2. Under jurisdiction, that the FAC includes a state

3   claim for "Negligent Infliction of Emotional Distress" (DOC #12 ¶5(c), p.4, line

4   17; 3. That Defendants were acting "within the course and scope of their

5   employment, including but not limited to, under <u>California Government Code</u> §§

6   815.2, 820, 825, on or about the October 30, 2022, date of the Incident" (FAC ¶14,

7   p.6, lines 27-28, p.7, line 1); 4. That Defendant CITY is legally responsible for all

8   damages "…caused by the intentional and/or negligent and/or otherwise tortious

9   conduct of Defendants…who shot Decedent…" (FAC ¶14, p.7, lines 2-11); 5. That

10  Defendants "were acting within their capacity as employees, agents,

11  representatives, and servants of Defendants CITY, which is liable under the

12  doctrine of *Respondeat Superior,* pursuant to §§ 815.2, 820, 825 of the California

13  <u>Government Code</u>, et al." (FAC ¶18, p.8, lines 8-11); 6. In six separate paragraphs

14  in the General Allegations, the FAC alleges that the Plaintiffs "contemporaneously

15  witnessed" the Defendants "shoot Decedent" and "suffered severe emotional

16  distress as a result." (FAC ¶¶27-32); 7. In the General Allegations, the FAC

17  specifically pleads that the individual Defendants "utilized negligent tactics [and]

18  failed to appropriately warn of use of force and violated Defendant CITY…

19  policies and procedures for use of force including deadly force." (FAC ¶33, p.11,

20  lines 18-21); 8. The FAC specifically pleads that the individual Defendants

21  "discharged their firearms…negligently" (FAC ¶36, p.12, lines 4-8); 9. In the

22  claim for NIED, the FAC pleads that Defendants "were negligent and careless in

23  their use of firearms" and "were unreasonable in failing to use appropriate tactics,

24  including verbalization, de-escalation, calling for backup, use of less-than-lethal

1    force, techniques and weapons, containment, issuing verbal warnings, and other

2    police tactics before resorting to utilizing deadly force." (FAC ¶59, p.19, lines 11-

3    17); 10. In the claim for NIED, the FAC pleads that the Defendants "breached its

4    duty of due care" (FAC ¶59, p.19, lines 17-18); 11. In the claim for NIED, the

5    FAC that Plaintiffs "were in the immediate vicinity of Decedent [and]

6    contemporaneously witnessed and perceived the injury producing shooting event

7    incident both visibly and audibly" (FAC ¶60, p.19, lines 26-28); 12. In the NIED

8    claim, the FAC pleads that "at the time of the negligent and deadly conduct of

9    Defendants...Plaintiffs "were contemporaneously aware that the conduct was

10    causing injury to their close relative, son, and brother" because Plaintiffs

11    "contemporaneously witnessed the gunshots and heard the shots fired, and also

12    heard the moaning of Decedent...who was struck with the bullets that caused his

13    death" (FAC ¶61, p.20); 13. The FAC pleads that "as a direct and proximate result

14    of contemporaneously witnessing the injury to Decedent...caused by the negligent

15    and careless conduct of Defendants...Plaintiffs sustained severe emotional distress,

16    including post-traumatic stress disorder (PTSD), psychological trauma, and other

17    damages..." (FAC ¶62, p.20); and 14. Lastly, the Prayer of the FAC, among other

18    things, claims "compensatory general damages for severe emotional distress,

19    anxiety, fear, and all other non-economic damages, in an amount to be proven at

20    the time of trial (FAC p. 21, lines 57).

21          For a 12(b)(6) motion to dismiss, the facts plead in the complaint are to be

22    taken in the light most favorable to the plaintiff. "In ruling on a motion to dismiss

23    under FRCP 12(b)(6), the court must construe the complaint in a light most

24    favorable to the plaintiff, accept all the factual allegations as true, and determine

1  whether the plaintiff undoubtedly can prove no set of facts in support of his claims

2  that would entitle him to relief." *Sistrunk v. City of Stringsville*, 99 F.3rd 194, 197

3  (6th Cir.1996); *Kline v. Rogers,* 87 F.3rd 176, 179 (6th Cir.1996); *Wright v.*

4  *MetroHealth Med. Ctr.,* 58 F.3rd 1130, 1138 (6th Cir.1995). When an allegation is

5  capable of more than one inference, it must be construed in the plaintiff's favor.

6  *Columbia Natural Res., Inc. v. Tatum,* 58 F.3rd 1101, 1109 (6th Cir.1995*); In re*

7  *DeLorean Motor Co.,* 991 F.2d 1236, 1240 (6th Cir.1993); *Mayer v. Mylod,* 988

8  F.2d 635, 638 (6th Cir.1993). Hence, a judge may not grant a Rule 12(b)(6) motion

9  based on a disbelief of a complaint's factual allegations.  *Wright,* 58 F.3rd at 1138;

10  *Columbia Natural Res., Inc.,* 58 F.3d at 1109. Therefore, in this case, the inference

11  must be taken that William Castillo is the father of William Salgado and therefore

12  has a right to bring this action for a loss of familial relations, that William

13  Salgado's adoptive mother also has a claim for loss of familial relations as his

14  mother, that the Decedent's brothers, father, sister and step mother were close

15  relatives of the Decedent and therefore have standing to bring claims for Negligent

16  Infliction of Emotional Distress.

17  II.    **THE STATE CLAIMS**

18      CACI sets out the elements a Plaintiff must prove to sustain a negligent

19  infliction of emotional distress claim. A Plaintiff making a claim for negligent

20  infliction of emotional distress must show:

21  1. That Defendants negligently caused the death of Decedent William Salgado;

22  2. That when the shooting that caused the death of William Salgado occurred,

23      Plaintiffs were present at the scene;

24  3. That Plaintiffs were then aware that the shooting was causing the death of

1    William Salgado;

2    4.  That Plaintiffs suffered serious emotional distress; and

3    5.  Defendants' conduct was a substantial factor in causing Plaintiffs' serious

4        emotional distress. CACI 1621.

5    Here, Defendants did not raise the issue of whether the first element, that

6    Defendants negligently caused the death of William Salgado. In fact, they did not

7    even bring a summary judgment motion against the Estate in its negligence claims

8    in this case.

9    The 9th Circuit follows the rule that new issues cannot be raised for the first

10   time in reply briefs because it would be unfair to the opposers who have no

11   advantage of briefing the issue. *Nevada v. Watkins* (9th Cir. 1990) 914 F.2d 1545,

12   1560; citing *United States v. Birtle* (9th Cir. 1986) 792 F.2d 846, 848 (quoting

13   *Thompson v. Commissioner* (9th Cir. 1980) 631 F.2d 642, 649, *cert. denied* 452

14   U.S. 961, 101 S. Ct. 3110, 69 L. Ed. 2d 972 (1981)). They have therefore failed to

15   shift the burden to Plaintiff to prove negligence and cannot raise this issue in reply.

16   The focus remains on standing.

17   **A. The Decedent's Father Has Standing to Assert State Law Claims**

18   A plaintiff may recover damages for emotional distress caused by observing

19   the negligently inflicted injury of a third person if the plaintiff is closely related to

20   the victim, is present at the scene of the event at the time it occurs and is then

21   aware that it is causing injury to the victim, and the plaintiff suffers serious

22   emotional distress. *Thing v. La Chusa* (1989) 48 Cal. 3d 644, 668.

23   "Absent exceptional circumstances, recovery should be limited to relatives

24   residing in the same household, ***or parents, siblings, children, and grandparents***

15
**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

1    *of the victim*." *Thing v. La Chusa* (1989) 48 Cal. 3d 644, 668 (***emphasis added***).

2    William Castillo is the biological father of the Decedent and therefore has standing

3    for recovery.

4        Under the Uniform Parentage Act, William Castillo would clearly be found

5    the father of William Salgado in California. Uniform Parentage Act § 7601 holds:

6        "(a) "Natural parent" as used in this code means a
        nonadoptive parent established under this part, whether
7        biologically related to the child or not.
        (b) "Parent and child relationship" as used in this part
8        means the legal relationship existing between a child and
        the child's natural or adoptive parents incident to which
9        the law confers or imposes rights, privileges, duties, and
        obligations. The term includes the mother and child
10       relationship and the father and child relationship.
        (c) This part does not preclude a finding that a child has a
11       parent and child relationship with more than two parents.
        (d) For purposes of state law, administrative regulations,
12       court rules, government policies, common law, and any
        other provision or source of law governing the rights,
13       protections, benefits, responsibilities, obligations, and
14       duties of parents, any reference to two parents shall be
        interpreted to apply to every parent of a child where that
15       child has been found to have more than two parents under
16       this part."

17       William Castillo is the biological father of Decedent William Salgado and

18   therefore has standing as a close relative to assert claims for negligent infliction of

19   emotional distress. PUMF # 1-6. He raised William Salgado and was there for him

20   throughout his life and into adulthood. PUMF # 7-11. For purposes of NIED,

21   William Castillo need only be a close relative, but he is actually part of William

22   Salgado's immediate family and his biological father. PUMF # 1-12. This is

23   clearly enough to establish standing, and he will succeed on the merits of his claim,

24   as well.

1    William Castillo was on the balcony overlooking the scene of the shooting at

2    the time that it happened. PUMF # 23. William was then aware that his own son

3    was being shot and killed at the time of the shooting. PUMF # 23. He has suffered

4    severe emotional distress as a result. PUMF # 29-33.

5    With the issues of negligence and Defendants' conduct still in dispute, Oscar

6    is entitled to a trial on the merits of his claim for negligence, including negligent

7    infliction of emotional distress.

8    **B. The Decedent's Brother, Osmar Antonio Castillo Blandon, Has
     Standing to Assert State Law Claims.**

9    Likewise, Decedent William Salgado's brother, Osmar Antonio Castillo

10   Blandon ("Osmar") has standing to assert claims for negligent infliction of

11   emotional distress.

12   "Absent exceptional circumstances, recovery should be limited to relatives

13   residing in the same household, *__or parents, siblings, children, and grandparents__*

14   *__of the victim__*." *Thing v. La Chusa* (1989) 48 Cal. 3d 644, 668 (*__emphasis added__*).

15   Osmar is Decedent William Salgado's brother by blood, and therefore has

16   standing to assert claims for negligent infliction of emotional distress. PUMF # 20,

17   24. Osmar was on a balcony overlooking the scene of the incident when his

18   brother, Decedent William Salgado, was shot. PUMF # 23, 26. He was then aware

19   that his brother was being killed. PUMF # 23, 34, 36, 38, 39. As a result, Oscar

20   Ernesto Castillo suffered severe emotional distress. PUMF # 34-39.

21   With the issues of negligence and Defendants' conduct still in dispute, Oscar

22   is entitled to a trial on the merits of his claim for negligence, including negligent

23   infliction of emotional distress.

24

## C. The Decedent's Youngest Brother, O.C.E., and Step-Mom Have Standing to Assert State Law Claims.

Decedent William Salgado's youngest brother, O.C.E., and step-mom, Eugenia Espinoza, have standing to assert claims for negligent infliction of emotional distress.

"Absent exceptional circumstances, recovery should be limited to relatives residing in the same household, *or parents, siblings, children, and grandparents of the victim*." *Thing v. La Chusa* (1989) 48 Cal. 3d 644, 668 (*emphasis added*). A Plaintiff bystander does not have to actually witness the infliction of injury, provided that the Plaintiff was at the scene of the accident and sensorially aware of the accident and the necessarily inflicted injury. *Wilks v. Hom*, 2 Cal.App.4th 1267, 1271.

O.C.E. is Decedent's youngest brother and therefore is a close relative with standing to make a claim for negligent infliction of emotional distress. PUMF # 19, 20. He was present at the scene at the time of the shooting and he heard the shots. PUMF # 26, 27. He knew where the Decedent was at the time of the shooting and who was being shot at the time of the shooting. PUMF # 27. At the time of the shooting, O.C.E. thought to himself that the police had just killed his brother. PUMF # 27. He was then aware that his brother was being killed. PUMF # 27. As a result, O.C.E. suffered severe emotional distress. PUMF # 23, 25-27.

Eugenia Espinoza, Decedent's step-mom, had a close relationship with the Decedent and is therefore a close relative with standing to make a claim for negligent infliction of emotional distress. PUMF # 22. She was with Osmar in the apartment at the time of the shooting, and also knew where Decedent was at the

1    time of the shooting. PUMF # 23. She was then aware that Decedent William

2    Salgado was being killed, and suffered severe emotional distress as a result.

3          With the issues of negligence and Defendants' conduct still in dispute,

4    O.C.E. and Eugenia Espinoza are entitled to a trial on the merits for their claims

5    for negligence, including negligent infliction of emotional distress.

6    **D. Plaintiffs Concede that Juana Miranda and Karla Blandon Were Not Present at the Scene and Therefore Likely Cannot Assert Negligent**

7    **Infliction of Emotional Distress Claim.**

8          Juana Miranda and Karla Vanessa Blandon were not present at the scene at

9    the time of the shooting of William Salgado, and therefore likely cannot assert

10   their negligent infliction of emotional distress claim. In recognition of this

11   likelihood, Plaintiffs' counsel offered to dismiss these claims, but Defense counsel

12   preferred to file the MSJ.

13         **Regardless, Juana Miranda may still have standing under the**

14   **Fourteenth Amendment for Loss of Familial Relations.**

15   III.   **FOURTEENTH AMENDMENT CLAIMS**

16         Parents have a constitutionally protected right to companionship of a child.

17   *Johnson v. Bay Area Rapid Transit Dist.,* (9th Cir. 2013) 724 F.3d 1159, 1169;

18   *Smith v. City of Fontana*, 818 F.2d 1411, 1418 (9th Cir. 1987)*, overruled on other*

19   *grounds by Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999) (en

20   banc). This liberty interest is rooted in the Fourteenth Amendment, which states in

21   relevant part that "[n]o State shall . . . deprive any person of life, liberty, or

22   property, without due process of law." U.S. Const. amend. XIV, § 1. State

23   interference with these liberty interests may give rise to a Fourteenth Amendment

24   due process claim that is cognizable under 42 U.S.C. § 1983. *Kelson v. City of*

1 | *Springfield*, 767 F.2d 651, 654 (9th Cir. 1985), *overruled on other grounds by*

2 | *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)).

3 |       Here, both the Decedent's Father, William Castillo, and the Decedent's

4 | adoptive mother, Juana Maria Miranda ("Juana Miranda"), had relationships with

5 | William Salgado which reflected the assumption of parental responsibility. PUMF

6 | # 9-17, 22, 28. Plaintiff has at the very least shown that the issue of the decedent's

7 | relationship with his father and his adoptive mother is disputed and therefore this

8 | Motion for Summary Judgment does not dispose of the Plaintiff's claims on that

9 | basis and the MSJ should be denied.

10 | **A. The Decedent's Father Has Standing to Assert Fourteenth Amendment Claims.**

11 |       The constitutionally protected right to companionship is independently held

12 | by both the parent and child. *Smith v. City of Fontana*, (9th Cir. 1987) 818 F.2d

13 | 1411, 1418. A parent's right includes a companionship interest even after a child

14 | reaches the age of majority. *Id.* at 1419; *see, e.g., Strandberg v. City of Helena*, 791

15 | F.2d 744, 748 n.1 (9th Cir. 1986) (recognizing that parents of deceased 22-year-old

16 | son could claim violation of right to companionship and society).

17 |       The Ninth Circuit has recognized that a parent has a constitutionally

18 | protected interest in companionship and society with their child. *Khachatryan v.*

19 | *Blinken* (9th Cir. 2021) 4 F.4th 841, 863; *citing Lee v. City of Los Angeles*, 250 F.3d

20 | 668, 685 (9th Cir. 2001) (recognizing that a parent's fundamental liberty interest in

21 | the companionship of a child is "well established" and logically extends to protect

22 | a child's interest in a parent's companionship); *Ward v. City of San Jose*, 967 F.2d

23 | 280, 283 (9th Cir. 1991) (recognizing that familial relationship between parent and

24 |

1   child gave rise to due process action in *Smith*); *Wheeler v. City of Santa Clara*, 894

2   F.3d 1046, 1058 (9th Cir. 2018) ("[C]hildren's Fourteenth Amendment rights to

3   companionship with their parents have been interpreted as reciprocal to their

4   parents' rights."); *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1169

5   (9th Cir. 2013)."

6       In order to bring a Fourteenth Amendment due process claim, the parent and

7   child must have relationships "which reflect some assumption 'of parental

8   responsibility.'" *Kirkpatrick v. County of Washoe*, 843 F.3d 784, 789 (9th Cir.

9   2016) (en banc).

10      Here, it is clear that William Castillo assumed the responsibilities of a

11  parent, as set out in Plaintiffs' Separate Statement of Undisputed Material Facts.

12  PUMF # 1-17, 22.

13      Defendants assert the present case is like *Wheeler v. City of Santa Clara*,

14  894 F.3d 1046, 1058 (9th Cir. 2018), where the Court did not extend 14th

15  Amendment rights to the father of a child who had been adopted out when they

16  were young. The present case is distinguished from *Wheeler*. In *Wheeler*, the

17  biological father only had a close relationship with his child for part of their

18  childhood and it is unclear who the child was adopted out to. While it was called

19  an "adoption," William Salgado was not legally adopted, or with a notary or with

20  signed papers; William Omar Castillo Miranda's mother offered to 'help him' so

21  that he could help the family financially. PUMF # 15. The father explicitly retained

22  his parental responsibility and was merely seeking assistance from his own parents

23  in the raising of his child. PUMF # 1-11, 16, 17. It is common for grandparents to

24  assist in various amounts in raising their grandchildren. However, William Castillo

1   was always recognized as the father by the adoptive mother of William Salgado

2   and the siblings of William Salgado and continued to have a close relationship with

3   his child throughout their childhood and life. PUMF # 1-11, 16, 17. Nobody in

4   William Castillo's life disputes that William Castillo is the father of William

5   Salgado. PUMF # 1-11, 16, 17. In fact, the Decedent's sister Karla, had no

6   knowledge that Decedent William Salgado was ever adopted, and was never told

7   as such by anyone. PUMF # 21.

8        In addition to maintaining a close relationship with William Salgado

9   throughout his life and raising him as his son, William Castillo even lived with the

10  Decedent at the time of William Salgado's death. PUMF # 22.

11       In *Fosbinder v. Cty. Of San Diego,* 2024 U.S. Dist. LEXIS 197571, the

12  father of an adult son decedent lived across the country from his son prior to his

13  death, with the father living in a home in Florida while the son was homeless in

14  California. The District Court for the Southern District of California found this

15  relationship to be sufficient for standing and distinguishable from *Wheeler*. In the

16  case at hand, the father not only was close to the son throughout his life, but lived

17  with him at the time of his son's death. PUMF # 22. He even witnessed his son's

18  death due to the fact that they lived together at the time of the shooting. PUMF #

19  22, 23.

20       In this case, William Castillo is the biological father of the Decedent

21  William Salgado. PUMF # 1-11. In addition, here, the Decedent actually did live

22  with his father near the end of his life, had a close relationship with his father, his

23  father always held himself out as the father of the Decedent, and William Salgado

24  always recognized William Castillo as his father. PUMF # 1-11, 22. Put simply,

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

1  Castillo remained in his life as his father, helped raise him, and held himself out as

2  the father. PUMF # 1-11, 22. This is sufficient for a finding that William Castillo is

3  the father for purposes of loss of familial relations.

4        At the same time, California follows the Uniform Parentage Act, where there

5  is a strong public policy favoring the finding of parent-child relationships for the

6  purposes of asserting rights and responsibilities.

7        Under the Uniform Parentage Act § 7610:

8             The parent and child relationship may be established as
follows:

9             (a) Between a child and the natural parent, it may be
established by proof of having given birth to the child, or

10             under this part.

11             (b) Between a child and an adoptive parent, it may be
established by proof of adoption.

12             *Uniform Parentage Act § 7610 (Amended by Stats. 2013,
Ch. 510, Sec. 2. (AB 1403) Effective January 1, 2014.)*

13        Under this definition, it is clear that William Castillo is William Salgado's

14  father. He is the natural, biological parent of William Salgado, and that is enough

15  to prove a parent-child relationship under the Uniform Parentage Act in the State

16  of California.

17  **B. The Decedent's Informal Adoptive Mother Has Standing to Assert
Fourteenth Amendment Claims**

18        Adoptive mothers have been found to have rights under the Fourteenth

19  Amendment. *Tylena M. v. Heartshare Children's Servs.* (S.D.N.Y. 2005) 390 F.

20  Supp. 2d 296, 319. Here, there is evidence to show that Juana Miranda, the

21  grandmother, may be Decedent's informal adoptive mother and assisted in raising

22  William Salgado and therefore has rights to a loss of familial relations claim under

23  the Fourteenth Amendment. PUMF # 13-15

24

1      At the same time, California follows the Uniform Parentage Act, where there

2  is a strong public policy favoring the finding of parent-child relationships for the

3  purposes of asserting rights and responsibilities.

4      Under the Uniform Parentage Act § 7610:

5          The parent and child relationship may be established as
   follows:

6          (a) Between a child and the natural parent, it may be
   established by proof of having given birth to the child, or

7          under this part.

8          (b) Between a child and an adoptive parent, it may be
   established by proof of adoption.

9          *Uniform Parentage Act § 7610 (Amended by Stats. 2013,
   Ch. 510, Sec. 2. (AB 1403) Effective January 1, 2014.)*

10      Under this statute, it is possible Juana Miranda established a parent-child

11  relationship, and therefore she is entitled to the rights of a parent as well. That

12  William Castillo is the father of William Salgado does not conflict with this right;

13  the Uniform Parentage Act does not preclude a finding that a child has a parent-

14  child relationship with more than two parents. *Uniform Parentage Act* §7601(b).

15  **C. Plaintiffs Concede that the Siblings of the Decedent May Not Have
   Standing to Assert Fourteenth Amendment Claims.**

16      Plaintiffs concede that the sibling Plaintiffs may not have standing to assert

17  14th Amendment Claims. **However, these Plaintiffs, with the exception of Karla**

18  **Blandon, do qualify and do have standing under state law claims for negligent**

19  **infliction of emotional distress.**

20  //

21  //

22  //

23  //

24

IV.    **CONCLUSION**

For the above stated reasons, Plaintiffs respectfully request that the Court

**DENY** Defendants' Motion for Summary Judgment.

Dated: March 11, 2025

**CARRAZCO LAW, A.P.C.**

/S/ KENT M. HENDERSON

BY: _____

ANGEL CARRAZCO, JR.
KENT M. HENDERSON, of counsel
CHRISTOPHER L. HOLM
Attorneys for Plaintiffs

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**