Angel Carrazco, Jr. (SBN 230845)
Kent M. Henderson, of counsel (SBN 139530)
Christopher L. Holm (SBN 308446)
**CARRAZCO LAW, A.P.C.**
2400 Main Street, Suite 200
Irvine, CA 92614
Telephone:  (714) 541-8600
Facsimile:   (714) 541-8601

Attorneys for Plaintiffs
William Omar Castillo Miranda, et al

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM OMAR CASTILLO MIRANDA, an individual and as Successor in Interest for Decedent, WILLIAM RENE SALGADO MIRANDA; JUANA MARIA MIRANDA, an individual and as Successor in Interest for Decedent, WILLIAM RENE SALGADO MIRANDA; O.C.E. a minor by and through their Guardian ad Litem, EUGENIA GUADELUPE ESPINOZA SALMERON; EUGENIA GUADELUPE ESPINOZA SALMERON, an individual; OSMAR ANTONIO CASTILLO BLANDON, an individual; KARLA VANESSA BLANDON, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF HUNTINGTON PARK; RENE REZA, an individual; APRIL WHEELER, an individual; MATTHEW RINCON, an individual; NICK NICHOLS, an individual; JOSE A. YAMASAKI, an individual; SAUL RODRIGUEZ, an individual; and DOES 1 TO 10, inclusive, DOES 1-10, inclusive.<br><br>Defendants. | CASE NO.: 2:23-cv-09412-CBM-AGR<br><br>DECLARATION OF KENT M. HENDERSON IN SUPPORT OF EX PARTE APPLICATION AND PETITION FOR APPROVAL OF MINORS' COMPROMISE OF MINOR PLAINTIFF, O.C.E. AND EXHIBIT NOS. 1-3 THERETO<br><br>[Ex Parte Application Memorandum of Points and Authorities filed concurrently herewith]<br><br>The Hon. Consuelo Marshall |

**TO THE CLERK OF THE COURT AND TO THE HONORABLE CONSUELO MARSHALL:**

**PLEASE TAKE NOTICE** that Plaintiff, O.C.E., a minor by and through their Guardian Ad Litem, EUGENIA GUADELUPE ESPINOZA SALMERON, hereby submits the Declaration of Kent M. Henderson and Exhibit Nos. 1-3 thereto in support of Ex Parte Application and Petition for Approval of Minor's Compromise of Minor Plaintiff O.C.E.

DATED: July 22, 2025

                           **CARRAZCO LAW, A.P.C.**

                           /s/ *Kent M. Henderson*
           By: _____
                 ANGEL CARRAZCO, JR.
                 KENT M. HENDERSON
                 CHRISTOPHER L. HOLM
                 Attorneys for Plaintiffs
                 William Omar Castillo Miranda, et al

## **DECLARATION OF KENT M. HENDERSON**

I, Kent M. Henderson, do hereby declare and state as follows:

1. I am an attorney at law, duly licensed to practice before all courts of the State of California and the following Federal Courts: Supreme Court of the United States; United States Court of Appeals for the Ninth Circuit; United States Court of Appeals for the Fifth Circuit; United States Court of Federal Claims; United States District Court for the Northern, Eastern, Central and Southern Districts of California and the Eastern District of Texas. I am Of Counsel with CARRAZCO LAW, A.P.C. (hereinafter, sometimes referred to as "CARRAZCO LAW, AP.C."), counsel of record for the Plaintiff O.C.E. in the above-entitled action. The facts stated in this declaration are of my own personal knowledge and/or I am informed and believe they are true and if called upon to testify as a witness, I could and would competently testify thereto.

2. This is a case regarding the police shooting death of Decedent WILLIAM RENE SALGADO MIRANDA (aka WILLIAM SALGADO) (age 31 at time of death). He was shot by CITY OF HUNTINGTON PARK and its HUNTINGTON PARK POLICE DEPARTMENT (hereinafter sometimes referred to collectively as "HPPD") police Officers RENE REZA, APRIL WHEELER, MATTHEW RINCON, NICK NICHOLS, JOSE A. YAMASAKI, and SAUL RODRIGUEZ (referred to at times collectively as "Defendant Officers'). Minor Plaintiff, O.C.E. is one of six Plaintiffs collectively referred to as the "Miranda Plaintiffs," and is the biological half-brother of Decedent, WILLIAM RENE SALGADO MIRANDA (aka WILLIAM SALGADO)

represented by current Plaintiffs' counsel. Plaintiff, O.C.E. is the only minor Plaintiff of the six Miranda Plaintiffs.

3. Our office had several meetings with Plaintiffs before the filing of the action. We requested documents including identification documents, papers regarding the Decedent and photographs, including a photograph of the Decedent at his point of rest immediately after the shooting. The evidence that these Plaintiffs had was critical because some of the Plaintiffs our office represented were with the Decedent at the time the police arrived and two of the Plaintiff saw the shooting. One of the issues in the case was the Defendants claiming that the Decedent ran or charged them and the Plaintiffs our office represented with their testimony and with the photograph advanced the Plaintiff's position that Decedent was not a threat because: A. he was about fifty (50) feet away from the Officers at his point of rest and B. the Decedent was not advancing but, rather, just moving back and forth as observed from the balcony of the apartments above the courtyard where Plaintiffs live and where the shooting took place. Our office was also able to obtain a video that was of a surveillance video taken by neighbor that, while it didn't show the shooting itself, it did show some of the events leading up to the shooting. There was no Body Worn Video in this case and the surveillance video was the only video of some portion of the events leading up to the shooting. Before preparing the Government Claim, Angel Carrazco, Jr. of CARRAZCO LAW, A.P.C. visited the scene of the shooting to get an idea of the distances and positioning at the time of the shooting.

4. Our office also obtained documents on damages including, identification card, a video of the Decedent dancing and nineteen photos of the Decedent with members of his family and other documents.

5. Plaintiff O.C.E., represented by current Plaintiffs' counsel, timely presented Government Claims to City of Huntington and thereafter timely filed a lawsuit that included federal (14th Amendment) and state supplemental (Negligent Infliction of Emotional Distress Claims. On May 1, 2023, Plaintiffs presented a Governmental Claim for Damages as to Plaintiffs by personal delivery to the City of Huntington Park and by U.S. Mail. The Government Claim was on the City of Huntington Park Form but also Plaintiffs' counsel drafted the Government Claim letter / attachment (5 pages) that detailed the claims and the bases of the claims pursuant to California Government Code §§905, 910, 911.2, etc., et. seq.

6. On December 27, 2023, Plaintiffs' counsel prepared and sent via certified mail a Demand for Public Records to the City of Huntington Park which included a request for the names of the involved Officers. The Public Records Act Request (PRAR) letter had designations and authorizations signed by the clients which our office prepared. Subsequently, the City of Huntington Park responded and provided the names of the involved individual officers. Plaintiffs' counsel also received many subsequent responses to the PRAR which were reviewed. Also, in December, 2023, Plaintiffs' counsel prepared and filed the Petition of Appointment of Guardian ad Litem and supporting documents as to Plaintiff O.C.E.

7.      More than 45 days elapsed from the time of the filing of the Government Claim and on June 11, 2024, Plaintiffs William Omar Castillo Miranda, et al filed Plaintiffs' Complaint eventually being issued Case No. 2-24-c-04898-MRA-MRW. Plaintiff's Complaint had two (2) Claims for Relief – 1. Violation of Substantive Due Process (14th Amendment) [Federal Claim] and Negligent Infliction of Emotional Distress [Supplemental State Law Claim] [ECF 1]. On June 24, 2024, the Court issued an Order of Transfer in which the case was transferred to the docket of the Honorable Consuelo B. Marshall. [ECF 10].

8.      The Court thereafter issued it Standing Order which was reviewed by Plaintiffs' counsel.  In the meantime, Plaintiffs' counsel was continuing to work to obtain the names of the officers involved by public record requests.  Plaintiffs' counsel prepared a First Amended Complaint that named the individual officers and On July 29, 2024, Plaintiffs filed the Plaintiffs' First Amended Complaint. [ECF 12].

9.      The case involved complicated, disputed issues regarding of alleged non-compliance of Decedent, claims of qualified immunity, claims of Decedent's alleged actions that Defendants alleged were consistent with "suicide by cop" at the time of incident, etc.  The case required an analysis of the physical evidence (bullet trajectories, etc.) compared to the testimony of the Defendant Officers and other evidence.  The Los Angeles County District Attorneys' Office conducted an investigation of the shooting and has not filed criminal charges.

10. On August 30, 2024 the parties stipulated and on September 3, 2024, the case was consolidated with the case styled as D.S., et al. v. City of Huntington Park, et al. and was now given the same Case No.: 2-23-09412-CBM-AGR which involved the same shooting death of the same Decedent and was brought by the Decedent's surviving children. [ECF 24].

11. On September 6, 2024, Plaintiffs filed Proofs Of Service of Plaintiffs' First Amended Complaint on Defendants. [ECF 17-23 in previous case number].

12. Defendants filed their Answers on July 31, 2024, and September 17, 2024. [ECF 34, 39].

13. On November 27, 2024, Plaintiffs served their Initial Disclosures. Plaintiffs served a Rule 26 Expert Disclosure.  Plaintiffs responded the Defendants Interrogatories, Requests for Admissions, and Request for Production of Documents to all six Plaintiffs in December of 2024 and January of 2025.

14. There were various stipulations filed and granted to continue dates in order to complete discovery, motions, etc. [ECF 40, 41, 45, 46].

15. Extensive written discovery and depositions were undertaken.  Plaintiffs' Request for Production of Documents was prepared and served November 15, 2024. Plaintiffs' counsel reviewed the Defendants Response to Request for Production of Documents served December 23, 2024 and the voluminous photographs, reports, audio recordings  and records produced.

16. Plaintiffs' counsel participated in the taking and/or defending of the following depositions: Officer Nick Nichols November 18, 2024; Officer Matthew Rincon November 20, 2024; Officer Rene A. Reza November 21, 2024; Juan Carillo, M.D. (the medical examiner / autopsy surgeon) November 22, 2024; Officer April Wheeler December 2, 2024; Plaintiff Eugenia Espinoza December 6, 2024; Plaintiff Osmar Castillo Blandon December 9, 2024; Officer Saul Rodriguez December 10, 2024; Officer Jose Yamasaki December 11, 2024; Plaintiff Willaim Omar Castillo Miranda December 23, 2024; Plaintiff O.C.E. December 23, 2024; Plaintiff Karla Blandon January 9, 2025; Plaintiff Juana Maria Miranda January 9, 2025;  Defendants' expert Clarence Chapman February 13, 2025; Defendants' expert Kris Mohandie February 14, 2025; Plaintiffs' expert Bennett Omalu, M.D.; and Plaintiffs' expert Scott DeFoe.

17. Defendants stated that they were going to file a Motion for Summary Judgment, and I prepared for and participated in a meet and confer on the issue of Summary Judgment with Defendants' counsel.  Plaintiffs' position is that we would oppose a Motion for Summary Judgment.

18. Plaintiffs' counsel reviewed Defendants' Motion for Summary Judgement and supporting evidence and Christopher L. Holm, Esq. assisted by Law Clerk Nathan Henderson prepared and assisted in preparing Plaintiffs' Opposition to Motion for Summary Judgment, Separate Statement of Disputed and Undisputed Material Facts, Declarations and filed same with the Court.  [ECF 27 in previous case number].  The

Motion for Summary Judgement Opposition required many hours (numerous days) to complete.

19. Plaintiffs' Opposition to MSJ included a Separate Statement wherein the Plaintiffs responded with evidence that had to be summarized and categorized to 27 facts put forward by Defendants and then raised 39 additional Plaintiffs' undisputed facts. This involved hours and hours of late-night work of collecting the applicable portions of depositions testimony and exhibits. Plaintiffs' counsel also performed legal research on the latest cases including on qualified immunity and prepared an Opposition to the MSJ with all of the supporting Points and Authorities and other supporting documents and exhibits.

20. There were substantial settlement efforts including a settlement conference with Mediator Richard Copeland that lasted for approximately 6 and 1/2 hours. There was preparation of a detailed Mediation Brief.

21. This case was vigorously litigated and Plaintiffs' counsel advanced and expended $ 28,890.72 in total recoverable costs made up of $ 21,338.22 in litigation costs and $ 7,552.50 in expert costs.

\\

\\

\\

\\

\\

22. The proposed global settlement of $500,000.00 is divided as follows:

1. **Adult Plaintiffs will receive the following gross amounts:**

$200,000.00 for Plaintiff, WILLIAM OMAR CASTILLO MIRANDA; $125,000.00 for Plaintiff, OSMAR ANTONIO CASTILLO BLANDON; $100,000.00 for minor Plaintiff, O.C.E.; $45,000.00 for Plaintiff, JUANA MARIA MIRANDA; and $20,000.00 for Plaintiff, EUGENIA GUADELUPE ESPINOZA SALMERON; and $10,000.00 for Plaintiff, KARLA VANESSA BLANDON.

The litigation costs incurred in litigating this case will be shared pro-rata among the adult Plaintiffs.

2. **Minor Plaintiff O.C.E.** Total Gross Settlement: $100,000.00 -- (20% of the overall gross settlement). Attorneys' fees $40,000.00 (40%). Minor Plaintiff, O.C.E. is not being charged any portion of the costs in this matter Litigation. <u>Net to Minor O.C.E. (to fund structure/annuity): $ 60,000.00</u>. [$100,000.00 - $40,000.00 - $ 0.00 = $60,000.00]. The structured settlement annuity for D.C.G. is with New York Life Insurance Company, which is rated A+ Superior, Financial Size XV by Best's Credit Ratings (See Exhibit Nos.1-3 hereto)

**<u>A true and correct, redacted copy of the "Payment Description" for this annuity for minor O.C. is attached as Exhibit No. 2 (which has been redacted to show just the minor Plaintiff's initials [O.C.E.] rather than his full name).</u>**

\\

23.     The net amount to be received by **Minor Plaintiff O.C.E.**, is $60,000.00, and will be payable to "New York Life Insurance Company" to fund a structured settlement annuity with a payout schedule as follows

Guaranteed Lump Sums:

$15,000.00 paid as a lump sum on 01/22/2027 guaranteed
$17,000.00 paid as a lump sum on 01/22/2029 guaranteed
$18,000.00 paid as a lump sum on 01/22/2031 guaranteed
$20,522.65 paid as a lump sum on 01/22/2033 guaranteed

The expected payout of this structured settlement annuity is $70,522.65.

24.     In terms of the description of the attorneys' fees and costs, as set forth above, the extensive, protracted litigation included: Carrazco Law, A.P.C. taking and defending a total of seventeen (17) depositions, including the Defendant police officers, guardians, Plaintiffs, the autopsy surgeon, and all retained experts. Carrazco Law, A.P.C. assisted in retaining, contributing to the cost of and providing some materials to the Plaintiffs' police practices expert (Scott DeFoe) and pathology / bullet trajectory analysis expert (Bennett Omalu, MD). Additionally, Carrazco Law obtained many records via Public Records Act Request from the City of Huntington Park's investigation, and by way of discovery (which required a Protective Order). Carrazco Law, A.P.C. further responded to written discovery, propounded written discovery, obtained the autopsy and autopsy photographs, conducted additional investigation, prepared clients for depositions, successfully opposed the Defendants' Motion for Summary Judgment, prepared settlement conference briefs, advised clients and attended

settlement conference, prepared additional paperwork regarding addition of parties, and prepared the current petitions.

25. Carrazco Law, A.P.C. also retained and provided all materials to the Plaintiffs' police practices expert (Scott DeFoe) whose Rule 26 Report was included in support of Plaintiffs' Opposition to Defendants' MSJ. The Opposition to the MSJ required compiling the evidence for the Separate Statement and numerous hours of preparation of the Points and Authorities and supporting documents and exhibits.

26. The attorneys' fees are being charged at 40% ($40,000.00 total) as allowed under the Carrazco Law, A.P.C. retainer agreements and given the special skill and difficult nature of these type of civil rights cases (described below). The attorneys' fees payment will include counsel structuring $60,000.00 of the $100,000.00 in attorneys' fees into an annuity.

27. Plaintiff O.C.E.'s damages in this case arise from (1) the individual loss of their half-brother; and (2) the severe emotional distress sustained when he contemporaneously witnessed (when he heard) the shooting death of their half-brother, a close familial relationship as recognized in a claim for Negligent Infliction of Emotional Distress. Plaintiff O.C.E.'s claims arise under both state and Federal law.

28. This petition was prepared by Carrazco Law, A.P.C., located at 2400 Main Street Suite 200, Irvine, CA 92614.

29. Carrazco Law, A.P.C., did not become concerned with this matter at the instance of any party against whom the claim of said minor is asserted.

12
DECLARATION OF KENT M. HENDERSON IN SUPPORT OF EX PARTE APPLICATION AND PETITION FOR APPROVAL OF MINORS' COMPROMISE OF MINOR PLAINTIFF, O.C.E. AND EXHIBIT NOS. 1-3

30. Carrazco Law, A.P.C., represents all Miranda Plaintiffs including Plaintiff, O.C.E. but are not employed by any other party or any insurance carrier involved in the matter.

31. Carrazco Law, A.P.C., has not to date received any compensation for services in connection herewith from any person.

32. Carrazco Law, A.P.C., accepted this engagement for a contingency fee, plus reimbursement for any costs advanced. The retainer agreement provides for a 40 percent attorney fee recovery if the matter concludes after commencement a lawsuit. The retainer agreement also provides that the 40 percent retainer is in addition to any attorneys' fees awarded under §1988. Plaintiffs' counsel is taking a 40% attorneys' fee in this matter.

33. CARRAZCO LAW, A.P.C. is made up of three practitioners with over 80 years of combined experience in the field of civil rights litigation. In the late 1980's and early 1990's, I worked on numerous police misconduct and civil rights cases, including cases of injuries suffered in the Orange County Jails. In the 1990's I worked on the Rodney King Federal civil case and I drafted the affirmative Motion of Summary Judgement that was filed on behalf of the Plaintiff Rodney Glenn King. At a point in time after filing the Motion, the City of Los Angeles stipulated to liability and I continued to work on the case working on the documents for the case when it was tried in front of Judge John G. Davies.

34.     Continuing to represent victims of law enforcement shooting and use of force, I worked on cases against the County of Orange, City of Santa Ana, City of Anaheim, City of Los Angeles and the County of Los Angeles throughout the 1990's until present.  I wrote the briefing for the Motion for Summary Judgment Opposition and, later all of the 9th Circuit Court of Appeals briefing for the Plaintiff/Appellant in the case, Drummond v. City of Anaheim, 343 F.3d 1052 (9th Cir. 2003).  The Drummond opinion authored by Justices James R. Browning, Harry Pregerson and Stephen Reinhardt, and relying in part on Deorle v. Rutherford, 272 F.3d 1272 (9th Cir. 2001), emphasized that when law enforcement agents are dealing with a person who appears to be emotionally disturbed or mentally ill, this may be a factor to consider in relation to the need and/or level of force to be used.  This factor has been later incorporated into Ninth Circuit Pattern Jury Instruction 9.25 "Unreasonable Use of Force" as an available factor for consideration by the Jury in cases that involve an appropriate fact pattern (factor No. 10).  I was later co-trial counsel and I tired the Drummond case in Federal Court (including Opening Statement, Closing Argument and the several of the expert witnesses).  Other cases which were published in other areas include Hernandez v. Paicius 109 Cal.App.4th 452 (2003) and Hernandez v. KWPH Enterprises, 116 Cal.App.4th 170 (2004).

\\

\\

35. In cases where I have sought to have my hourly fee approved by the Federal Courts, there was evidence in some case of being within the upper quartile of practitioners in this area and/or of having the fees requested approved based on experience, etc., including recently being awarded attorneys' fees on motion in representing the prevailing party in U.S. District Court for the Eastern District of California, the Honorable Dale Drozd.

36. Among cases that I have worked on recently they include cases that gained international attention: the shooting of Ernesto Canepa in Santa Ana, California and the shooting of Antonio Zambrano-Motes in Pasco, Washington [which Mr. Carrazco and I were admitted Pro Hac Vice to the U.S. District Court for the Eastern District of Washington].

37. Currently our firm has an active case list, including several high profile use of force cases all involving serious injuries or death.

38. This case involved a substantial amount of risk, a great deal of work and was vigorously litigated by a hardworking team of attorneys from Carrazco Law, A.P.C. Plaintiffs' counsel obtained outstanding results for their clients in this case. As a result of the attorneys' efforts, minor Plaintiff, O.C.E. will enjoy net payments of $70,522.65 (the total of the annuities expected payouts and the blocked account) spread throughout his life. As a result of the work of Plaintiffs' counsels the Huntington Park Police officers responsible for their loved one's death was the subject of an important civil rights settlement, which (it is hoped) will deter future police misconduct of this kind.

Put simply, the result in this case served the public interest.

39. If O.C.E.'s counsel were not awarded a fully compensatory fee in such cases, then this would discourage similarly situated attorneys from taking these types of cases. Specifically, it would provide a disincentive for skilled attorneys to take cases involving minor plaintiffs, which if anything require a higher level of legal expertise and experience than cases involving adult plaintiffs. Civil rights cases are difficult enough for attorneys to take and win, without the additional disincentive of a reduced fee at the end. In sum, a larger reduction of the attorney's fees would inhibit the provision of high quality of legal services to civil rights victims who are minors. In turn, minor plaintiffs, such as O.C.E., would not be able to attract competent counsel who could achieve similar results. Accordingly, Plaintiff O.C.E.'s attorneys request the approval of the full amount of the requested attorneys' fees.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed this 25th day of July, 2025 at Irvine, California.

/S/ Kent M. Henderson,
Declarant